UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* EHR AVIATION, INC., <br> Petitioner. | Case No. 16-mc-80093-JCS <br><br> **ORDER REGARDING MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER** <br> Re: Dkt. No. 6 |

## I. INTRODUCTION

Respondent Donald Walker, an attorney representing himself, moves to quash the Court's previous Order granting an ex parte application by Petitioner EHR Aviation, Inc. ("EHR") for the production of documents currently in Walker's possession for use in British Columbia court proceedings. In the British Columbia case, EHR seeks to collect a default judgment entered by the United States District Court for the Middle District of Florida against Kenneth Lawson, and a central issue of the British Columbia case is whether Lawson had notice of the Florida action. EHR obtained an order by the British Columbia court requiring a private investigator, James Craig, to produce documents related to his investigation of whether Lawson was properly served in the Florida action (the "Investigation File," also referenced by the parties as the "Craig File"). Craig transferred his only copy of the Investigation File to Walker at Walker's request, and EHR filed its application in this Court to compel Walker to produce the Investigation File. The Court granted that application without prejudice to any argument Walker might raise in a motion to quash. Walker now moves to quash based on the attorney work product doctrine. The Court held a hearing on September 23, 2016. For the reasons discussed below, Walker's motion is DENIED. Walker is ORDERED to the Investigation File unredacted and in its entirety no later than September 23, 2016.

## II. BACKGROUND

### A. Florida Litigation

On March 6, 2009, EHR filed an action against Lawson and Starwood, Inc. ("Starwood") in the Middle District of Florida, alleging that Lawson and Starwood fraudulently procured a loan from EHR by drastically misrepresenting the condition of an airplane, defaulted on the loan, and misappropriated funds that they received from EHR. Andrisoi Application Decl. (dkt. 2) ¶¶ 4, 6 & Ex. B (EHR's complaint in the Florida action, *EHR Aviation Inc. v. Starwood Aviation, Inc.*, No. 3:09-cv-00210-TJC-TEM (M.D. Fla. Mar. 6, 2009)).[1] According to records from the Nevada Secretary of State, Lawson was the sole owner, shareholder, and director of Starwood, and served as its president, secretary, and treasurer. *Id.* ¶ 5 & Ex. C. Walker's present motion asserts without evidence that Lawson was "neither a director nor employee of Starwood" at the time of the Florida action. Mot. (dkt. 6) at 3.

Walker was engaged by Starwood to provide advice related to the Florida action, although he asserts in his present motion that Starwood never entered an appearance in that case. *Id.*; Andrisoi Application Decl. ¶ 7; Walker Decl. (dkt. 6-1) ¶ 3. Walker did not represent Lawson in the Florida action, Mot. at 3, and appears to take the position, but does not state explicitly in the record before this Court, that he does not currently represent Lawson.

EHR attempted to serve Lawson by, among other efforts, service by mail at his last known address, a mailbox at a UPS Store in British Columbia. Andrisoi Application Decl. ¶ 8. Walker, purportedly on behalf of Starwood, hired Craig to investigate whether such service was effective. *Id.* ¶ 11; Walker Decl. ¶ 4. According to Walker, Starwood had an interest in attacking the validity of EHR's service on Lawson because Lawson could potentially seek indemnity from Starwood if he were held liable to EHR. Walker Decl. ¶ 4; Mot. at 3. Craig filed a declaration in the Florida action stating that Lawson did not own the mailbox that EHR had attempted to serve, and that service on that mailbox therefore did not meet British Columbia standards for service of

---

[1] Walker asserts in his present motion that EHR initially sued Starwood and later amended its complaint to add Lawson as a defendant. Mot. (dkt. 6) at 3. Based on the complaint filed with EHR's present application, that is false—both Starwood and Lawson were named as defendants at the outset of the Florida action. Andrisoi Application Decl. Ex. B.

process. Andrisoi Application Decl. ¶ 9 & Ex. D. EHR's attorneys requested a hearing to determine who hired Craig, why he filed his declaration, and whether he knew Lawson's current location. *Id.* ¶¶ 10−11 & Ex. E (Justice Affidavit) ¶¶ 10−11. Craig appeared by telephone and testified that Walker hired him, but refused to answer the presiding magistrate judge's questions regarding Lawson's whereabouts, stating that Walker had instructed him not to. *Id.* ¶ 11 & Ex. E ¶ 11. EHR later served Lawson via substitute service on the Florida Secretary of State, as permitted by Florida law for service on nonresidents who conduct business in the state. *Id.* ¶ 13 & Ex. E ¶¶ 17−20; *see* Fla. Stat. §§ 48.161, 48.181. The district court ultimately entered default judgment against Lawson in the amount of $3,437,942.74 plus post-judgment interest on October 21, 2011. Andrisoi Application Decl. ¶ 15 & Ex. G.

The court had previously entered default judgment of more than five million dollars against Starwood. Andrisoi Opp'n Decl. (dkt. 9-1) ¶ 3 & Ex. T. Walker asserts in his reply brief that because EHR would not discuss settlement, Starwood—despite knowledge of the Florida action—"pursued a risky strategy of not appearing . . . and then letting Applicant EHR obtain a default judgment" while "preserv[ing] the prospect of a later argument that the Federal Court in Florida had no jurisdiction because the pleadings . . . are knowingly false ." Reply (dkt. 10) at 3.

### B. British Columbia Action

On August 1, 2012, EHR filed an action in the Supreme Court of British Columbia, a trial court of that province, to enforce the Florida default judgment. Andrisoi Application Decl. ¶ 2 & Ex. A (Notice of Civil Claim, *EHR Aviation Inc. v. Lawson*, No. VLC-S-S-125409 (Can. B.C. Sup. Ct. Aug. 1, 2012)). Among Lawson's defenses in the British Columbia action is the contention that he lacked notice of the Florida action, and that enforcing the judgment entered against him would therefore be incompatible with Canadian standards of due process. *Id.* ¶ 16 & Ex. H.

In 2013, EHR's attorneys sent a letter to Craig requesting that he make the Investigation File available for inspection. *Id.* ¶ 19 & Ex. J. Craig refused to produce the Investigation File because Walker asserted that it was protected attorney work product, and EHR wrote to Walker asking him to allow Craig to produce the Investigation File on the basis that any protection from

3

discovery was waived by Craig submitting a declaration and testifying on the subject in the Florida action. *Id.* ¶ 20 & Ex. K. Walker declined to withdraw his claim of work product protection, and instead provided copies of only two of the files and a general description of the remainder. *Id.* ¶ 21 & Ex. L. The documents withheld include, among other things, "3 pages of handwritten reports of meetings and calls." *Id.* Ex. L.

EHR's counsel advised Walker in December of 2013 that EHR had filed an application to compel Craig to produce the Investigation File, and Walker responded by stating that he now had the file, that he was not subject to the jurisdiction of the British Columbia court, and that he maintained his claim of work product protection. *Id.* ¶ 22 & Exs. M, N. EHR responded to Walker on January 2, 2014, stating its belief that Craig still had the Investigation File and intended to produce it for inspection if the British Columbia court so ordered. *Id.* ¶ 24 & Ex. P. That letter also advised Walker how to proceed if he wished to oppose the application. *Id.* Ex. P. Lawson did not oppose the application, *id.* ¶ 25, and there is no indication that Walker appeared in the British Columbia action to oppose it. The British Columbia court granted the application on January 15, 2014 and ordered Craig to produce the Investigation File. *Id.* ¶ 26 & Ex. R (subsequent letter attaching the court order). On January 21, 2014, Craig emailed to EHR's counsel to state that he no longer had the Investigation File, that he had sent Walker a copy of it on November 14, 2013, and that Walker had requested the original Investigation File on December 17, 2013. *Id.* ¶ 27 & Ex. Q.[2] EHR wrote to Walker requesting that he produce the Investigation File and attaching the British Columbia order, but Walker declined to do so, stating that only a United States federal court should determine the scope and application of the attorney work product doctrine with respect to the Investigation File. *Id.* ¶ 29 & Exs. R, S.

Craig stated in an affidavit dated May 14, 2014 that Lawson contacted and retained him in 2010 to investigate the validity of service in the Florida action, and that he reported his findings to Lawson. *Id.* ¶ 17 & Ex. I (2014 Craig Affidavit) ¶¶ 3−5, 8. According to EHR's Canadian counsel, "Lawson denies having met with Craig to discuss the investigation of the UPS Box while

---

[2] It is not clear from the record when Craig sent Walker the original file.

4

the [Florida] Action was ongoing." *Id.* ¶ 18.

In July of 2015, Craig provided another affidavit stating that he believed that he was required to answer EHR's attorneys' questions in 2014 and that he would not have done so if he had been aware that he "should first seek to have privilege waived by Don Walker." Walker Decl. Ex. A (2015 Craig Affidavit) ¶¶ 4, 10. According to Craig, EHR's counsel did not inform him that he did not have to answer their questions or that he should take care not to disclose privileged information. *Id.* Ex. A ¶¶ 7−8. Craig stated that he answered the attorneys' questions about events four years earlier without access to his files, and that his "recollection was at times faint due to the passage of time and the confusion of the various characters and names." *Id.* Ex. A ¶¶ 5−6. Craig confirmed, however, that he spoke to Lawson in the course of his 2010 investigation. *Id.* Ex. A ¶ 12.

### C. Procedural History and Arguments Before This Court

EHR now applies for assistance from this Court pursuant to 28 U.S.C. § 1782 to compel Walker to produce the Investigation File for use in the British Columbia action. *See* Application (dkt. 1). The Court granted EHR's application without prejudice to any arguments that Walker might raise in a motion to quash. *See* Order (dkt. 5).

Walker moves to quash and for a protective order on the basis that the Investigation File is protected as attorney work product prepared in anticipation of litigation. *See generally* Mot. According to Walker's briefs, the documents at issue do not relate to the same subject matter as Craig's disclosures to the Florida court, and their protected status therefore has not been waived under Rule 502 of the Federal Rules of Evidence. Mot. at 5. Walker also argues that EHR is not entitled to the Investigation File under Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure because EHR can obtain the same information by deposing Craig and Lawson. *Id.* According to Walker's motion, his present interest in ensuring that EHR does not obtain the documents at issue is based on his continuing obligations to the now-defunct Starwood:

> The corporate existence of Starwood Aviation Inc. was revoked by the Nevada Secretary of State on 2011. It no longer effective exists. However, the Respondent [Walker] is acting to protect himself from any revival in the future. Starwood Aviation Inc. and the underlying case are an ethereal zombie.

5

*Id.* at 4; *see also* Andrisoi Application Decl. ¶ 23 & Ex. O (documentation of Starwood's revoked corporate status).

In its opposition, EHR argues that Walker waived protection of Craig's files by instructing Craig to file a declaration in the Florida action and to participate in a telephonic hearing, and that such waiver applies to the file as a whole because it all relates to the issue of Lawson's notice of the Florida action. Opp'n (dkt. 9) at 8−10. EHR also argues that it is entitled to the Investigation File under the necessity exception of Rule 26(b)(3)(A) because Craig has stated that his recollection of the events at issue is "faint," because the Investigation File will be relevant to EHR's deposition of Lawson, and because no other witness would have equivalent information regarding Lawson's knowledge of the Florida action. *Id.* at 11. EHR contends that Walker has improperly sought to thwart an order of the British Columbia court based on the unfounded pretense that Starwood might someday be revived and face obligations to indemnify Lawson, implying without explicitly claiming that Walker secretly represents Lawson, but EHR does not argue that such conduct is itself a legal basis to overcome attorney work product protection. *See id.* at 5−7. EHR also raises evidentiary objections to several of the assertions in Walker's declaration. *Id.* at 13−14.[3]

Addressing the waiver argument, Walker argues in his reply that "there is nothing to suggest that all of the contents of the [Investigation File] were discussed" at the Florida hearing where Craig testified by telephone, and that EHR has already received the documents in the file relevant to issues discussed—i.e., Craig's investigation of whether Lawson owned the mailbox where EHR attempted service. Reply at 4. Walker asserts that the broader issue of Lawson's awareness of the Florida action, which EHR now seeks to investigate, was not discussed at the hearing, and that Walker and Craig therefore did not waive protection of work product related to that issue. *Id.* at 5. Walker suggests that holds true even if Walker engaged Craig to investigate both Lawson's awareness of the matter and the ownership of the mailbox, and later instructed him to reveal the results of his investigation of the mailbox, so long as Walker did not instruct Craig to

---

[3] This Order assumes for the sake of argument that Walker's declaration is admissible in its entirety and thus does not reach EHR's evidentiary arguments.

disclose results of his investigation regarding Lawson's awareness. *See id.* at 5−6.

As for EHR's argument based on need under Rule 26(b)(3)(A), Walker contends that EHR's counsel could have asked Craig what Lawson knew about the Florida action, but "[t]here is no evidence that James Craig was asked or remembered or did not remember what Defendant Kenneth Lawson knew of the Summons and Complaint." *Id.* at 7. Accordingly, Walker argues that EHR must depose Craig on that issue before it can assert a need for the Investigation File under Rule 26(b)(3)(A). *Id.* Walker also contends that acquiring the document before deposing Lawson would be "a strange way to sequence a deposition as the Defendant Kenneth Lawson who [sic] will have prepared an answer to meet the question based upon the information being revealed." *Id.*[4]

At the hearing, Walker conceded that Craig's notes include material related to his investigation of the mailbox at the UPS Store, and that protection of such material was waived by Craig's disclosures in the Florida action. Walker also conceded that the Investigation File includes references to contact between Craig and Lawson during Craig's investigation.

## III.   ANALYSIS

### A.   Legal Standards

#### 1.   Applications Under 28 U.S.C. § 1782

"Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege." *In re Apple Inc.*, No. 3:12–mc–80013–JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246–47 (2004)). "The statute may be invoked where: (1) the discovery sought is from a

---

[4] Walker's reply suggests for the first time that the rules of the Supreme Court of British Columbia did not authorize the order that court issued compelling Craig to make the Investigation File available for inspection—in Walker's words, "[t]he lawyers' authority for such an order can only be pulled out of their netherworld." Reply at 2. If Walker believed that the Canadian court's order was improper under British Columbia procedural rules, and that such impropriety warrants quashing this Court's order granting EHR's present application, he could have raised that argument in his motion and allowed EHR to address the issue in its opposition. The Court declines to consider this argument first raised in Walker's reply. *See, e.g.*, *McMillan v. United States*, 112 F.3d 1040, 1047 (9th Cir. 1997) ("This argument was raised for the first time in the plaintiffs' reply brief and has therefore been waived.").

person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *Id.* (citing *In re Republic of Ecuador*, No. C–10–80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010)).

A district court retains wide discretion to grant or deny a § 1782 application and "determine what discovery, if any, should be permitted." *Id.* (citing *Intel*, 542 U.S. at 264; *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002)). "In exercising that discretion, the court should consider the following non-exhaustive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request is an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the discovery requested is unduly intrusive or burdensome." *Id.* (quoting *Intel*, 542 U.S. at 264–65) (internal quotation marks omitted).

Courts commonly grant ex parte applications filed pursuant to § 1782 as a party from whom discovery is sought will receive adequate notice and an opportunity to move to quash the discovery. *See IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2015) (citing *In re Republic of Ecuador*, 2010 WL 3702427, at *2). As in other civil contexts, the movant bears the burden of persuading the Court to quash subpoenas issued pursuant to § 1782. *See id.* (citing *In re Apple Inc.,* 2012 WL 1570043, at *1).

### 2. Work Product Protection

Walker's present motion does not argue that EHR's application should have been denied based on the necessary elements or discretionary factors under § 1782 discussed above, but rather turns on the application of the work product doctrine[5] to the Investigation File.

---

[5] Walker's arguments here and correspondence with EHR also occasionally reference the attorney-client privilege. *See, e.g.*, Mot. at 5 (asserting without citation to authority that "[o]btaining material for the purpose of impeachment of testimony is not a reason to breach to attorney client privilege"). Such instances appear to be imprecise attempts to reference the work product

The work product doctrine, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *See In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004)). "Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Recognizing the "realities" of litigation, the Supreme Court has observed that the doctrine protects material prepared by agents for the attorney as well as material prepared by the attorney directly. *In re Grand Jury Subpoena*, 357 F.3d at 907 (quoting *United States v. Nobles*, 422 U.S. 225, 239 (1975)). Indeed, Rule 26(b)(3) explicitly includes documents created by non-attorneys within the scope of its protection. *See* Fed. R. Civ. P. 26(b)(3)(A) (listing "the other party's attorney, consultant, surety, indemnitor, insurer, or agent" as examples of representatives whose work may be protected). The party asserting the work product doctrine has the burden of establishing its application to each document. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, C07-1359 PJH (JL), 2008 WL 5214330, at *3 (N.D. Cal. Dec. 12, 2008) (citing *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D. Wash. 2004)).

### B.  Production of the Investigation File is Warranted

There is no dispute that, at least when it was created, the Investigation File at issue here constituted protected work product. Instead, EHR argues that the Investigation File is subject to discovery because Walker waived work product protection by instructing Craig to testify about the results of his investigation, and also because EHR has substantial need for the Investigation File that would warrant its production even if it is protected. As discussed below, the Court agrees with EHR that the Investigation File must be produced despite being work product.

---

doctrine, as Walker has made no argument why the Investigation File should fall within the attorney-client privilege. Work product protection is a separate doctrine distinct from the attorney-client privilege, and is in fact not a true "privilege" at all. *See Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989) ("The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.").

### 1. Waiver of Work Product Protection

The work product doctrine can be waived, but waiver does not occur simply by virtue of sharing the privileged information with any third party. Waiver occurs only "where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495–96 (N.D. Cal. 2003)). "The work product privilege provides protection against adversaries and is not as easily waived as the attorney-client privilege." *Id.* at 580. Moreover, disclosure of some protected material in federal proceedings only serves as waiver of protection of additional undisclosed material where "the disclosed and undisclosed communications or information concern the same subject matter" and "they ought in fairness to be considered together." Fed. R. Evid. 502(a)(2)−(3).

Both parties' briefs likely overstate their arguments with respect to waiver. By all accounts, Craig's affidavit and testimony in the Florida action only concerned Lawson's connection (or lack thereof) to the mailbox where EHR had attempted service. *See* Andrisoi Application Decl. ¶¶ 9, 11 & Exs. D, E. Craig refused to answer questions about other matters, such as "the nature of how he was retained and the current location of Lawson." *Id.* Ex. E (Justice Affidavit) ¶ 11. EHR's assertion in its opposition that "Walker/Lawson hired to Craig to investigate and then testify in federal court regarding Lawson's *notice of the [Florida] Action*" therefore goes too far, since Lawson's testimony addressed only the discrete issue of whether Lawson had access to the mailbox and did not address whether he had notice through other means. *See* Opp'n at 10 (emphasis added). Based on the record available, it is not obvious that Lawson's notice of the action would have been relevant to the Florida court's inquiry if EHR failed to serve him by mail at a valid address.

On the other hand, where at least one central purpose of Lawson's investigation was to determine Lawson's relationship with the mailbox—the results of which he disclosed to the Florida court and to EHR at Walker's instruction—it strains credulity that none of the withheld documents relate to that subject matter. Such documents include, among other things: (1) two

pages of billing records; (2) three pages of handwritten meeting and telephone call notes; (3) an email from Ellen Lawson (the former owner of the mailbox) regarding permission for UPS Store personnel to speak to Craig;[6] and (4) a memorandum of instructions from Walker to Craig. Andrisoi Application Decl. Ex. L.[7]  Walker provided only: (1) a one-page report of Craig's investigation; and (2) a letter from the UPS Store to Ellen Lawson stating that her account was delinquent.  *Id.* Ex. L.  The nature of the documents withheld tends to undercut Walker's assertion that he has provided EHR with all documents relevant to the subject matter of Craig's public affidavit and testimony, *see* Reply at 4 ("[EHR] has the relevant content of the James Craig file as to the points discussed in that court hearing."), and Walker in fact conceded at the hearing that some of the withheld notes concerned Craig's investigation of the UPS Store mailbox and thus fall within the waiver of protection effected by Craig's disclosures in the Florida action.  The Court concludes that work product protection has been waived as to such material.

### 2. Substantial Need

Work product material that concerns factual matters[8] may be discovered if the party seeking it demonstrates a "substantial need" for the material and there is no other means for obtaining that information without undue hardship.  Fed. R. Civ. P. 26(b)(3)(A).  In its original discussion of the work product doctrine, the Supreme Court addressed circumstances warranting production of protected material as follows:

> We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case,

---

[6] Although no party has addressed the issue, it is not clear why this email would be protected under the work product doctrine to begin with.

[7] At the hearing, Walker initially stated that only two pages of handwritten notes had not been produced.  When asked by the Court, he conceded that billing records also had not been produced.  It is not clear whether the other documents listed here—a list derived from Walker's November 2013 letter to EHR, Andrisoi Application Decl. Ex. L—were produced prior to the hearing.

[8] Materials concerning "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" are subject to heightened protection.  *See* Fed. R. Civ. P. 26(b)(3)(B); *Arfa v. Zionist Org. of Am.*, CV 13-2942 ABC SS, 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014).  Walker does not suggest that the heightened standard applies to the Investigation File, and by reciting only the standard for factual material in his briefs, appears to concede that the ordinary standard applies.  *See* Mot. at 4; Reply at 7.

>discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.

*Hickman*, 329 U.S. at 511–12.

The Court is satisfied that EHR has substantial need for the Investigation File. The parties here have not briefed in detail the legal standard to be applied by the British Columbia court in resolving EHR's motion to enforce the Florida judgment, but Walker conceded, both in his motion and at the hearing, that whether Lawson had knowledge of the Florida action is relevant to the inquiry. *See* Mot. at 2 ("Basically, the B.C. court requires either that the defendant *have actual notice of the action*, imputed notice of the action *or* a procedure be followed [sic] to give the defendant notice of the action such as advertising the action." (emphasis added)). There is good reason to believe that documents in the Investigation File bear on that issue, and Walker has made no suggestion to the contrary. *See* Walker Decl. Ex. A (2015 Craig Affidavit) ¶ 12 (stating that Craig spoke to Lawson during the course of his 2010 investigation). Contemporary documentation of Craig's 2010 interactions with Lawson is necessary because Craig has stated that his "recollection was at times faint due to the passage of time and the confusion of the various characters and names," *Id.* Ex. A ¶ 6, because Lawson denies meeting with Craig at that time, Andrisoi Application Decl. ¶ 18, and because by challenging the validity of the Florida judgment, Lawson disputes that he had knowledge of that action at the time, *see* Mot. at 2 (stating that Lawson's actual notice of the action would be sufficient for the British Columbia court to enforce the judgment). *See also Hickman*, 329 U.S. at 511 (listing "impeachment or corroboration" as purposes that can be sufficient for discovery of protected work product).

The Court is also satisfied that EHR cannot obtain equivalent evidence through other

12

1  means without undue hardship.  Walker does not propose any other source for contemporary
2  records of Lawson's interactions with Craig in 2010.  Walker suggests that EHR can depose Craig
3  to obtain the same information, but Craig has already stated that his memory is "faint" as to
4  relevant issues.  *See* Walker Decl. Ex. A ¶ 6; *see also Hooke v. Foss Mar. Co.*, No. 13-CV-00994-
5  JCS, 2014 WL 1457582, at *7 (N.D. Cal. Apr. 10, 2014) (citing district court decisions allowing
6  discovery of work product where witnesses' memories of events at issue were faulty).  Walker
7  also suggests that EHR can learn what it needs by deposing Lawson, but there is no reason to
8  believe that Lawson will testify that he had knowledge of the Florida action when the basis of his
9  defense is that he lacked such knowledge.  Moreover, the Court finds nothing "strange," *cf.* Reply
10 at 7, about EHR's stated need to develop a factual record before deposing a party opponent
11 witness.  Walker conceded at the hearing that under the circumstances of this case, Lawson's
12 testimony itself cannot substitute for evidence expected to be relevant to impeach that testimony.

13 Because the Investigation File is necessary to either corroborate or impeach both Craig's
14 statements in previously-filed affidavits and Lawson's anticipated testimony, and there is no other
15 source of such evidence apparent, the Court finds that the Investigation File is subject to discovery
16 based on the "substantial need" test.

17 At the hearing, Walker initially stated that the Investigation File does not include
18 information relevant to Lawson's knowledge of the Florida action.  In response to questions from
19 the Court, however, Walker conceded that documents in the Investigation File reflected Craig's
20 contact with Lawson during the investigation, and that such material is relevant to the issue of
21 Lawson's knowledge.  Given the nature of the documents at issue, Walker's concessions as to
22 their contents, and Walker's at times contradictory representations on the subject, the Court
23 concludes that the entire Investigation File must be produced.

24 **IV.    CONCLUSION**
25 For the reasons discussed above, Walker's motion to quash is DENIED.  Walker
26 represented at the hearing that he could produce the Investigation File to EHR that same day.
27 / / /
28 / / /

1  Walker is therefore ORDERED to produce the Investigation File in its entirety and unredacted no
2  later than September 23, 2016.
3  **IT IS SO ORDERED.**
4  Dated: September 23, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge